**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| GREGORY HASH, on behalf of himself and all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | Case No. 1:20-cv-01321-RLM-MJD |
| | ) | |
| FIRST FINANCIAL BANCORP, formerly known as MAINSOURCE BANK, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT**

Lynn A. Toops
Lisa M. LaFornara
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46220
ltoops@cohenandmalad.com
llafornara@cohenandmalad.com

Jeffrey D. Kaliel
Sophia G. Gold
KALIEL GOLD PLLC
1875 Connecticut Ave. NW 10th Floor
Washington, D.C. 20009
jkaliel@cohenandmalad.com

John Steinkamp
JOHN STEINKAMP & ASSOCIATES
5214 East St., Suite D1
Indianapolis, IN 46227
john@johnsteinkampandassociates.com

*Counsel for Plaintiff and the proposed*
*Settlement Class*

# TABLE OF CONTENTS

Introduction ................................................................................................................... 1

Statement of Facts ......................................................................................................... 1

   I.   The litigation, motion practice, and discovery ................................................... 1

   II.  The mediation and Settlement. ........................................................................... 3

Legal Standard for Preliminary Approval and Notice .................................................. 4

   I.   A court grants preliminary approval to a class action settlement under Fed. R. Civ. P. 23(e)(1)(B) upon determining that "the court will likely be able to" later: (a) grant final approval; and (b) certify a class for entry of judgment on the settlement. ................. 4

      A.  A court determines whether it "will likely be able to" later grant final approval by preliminarily evaluating whether the settlement appears "fair, reasonable, and adequate" under the factors set forth in Fed. R. Civ. P. 23(e)(1)(B). .......................... 4

      B.  A court determines whether it "will likely be able to" later certify a class for entry of judgment on the settlement by preliminarily evaluating whether the proposed class meets the requirements of Fed. R. Civ. P. 23(a) and (b). ................................... 6

   II.  Once a court grants "preliminary approval," it must approve and direct notice to the class, set deadlines for class members to opt-out or object, and set a date for a final approval hearing ................................................................................................ 7

Argument ....................................................................................................................... 8

   I.   The Court should grant preliminary approval to the Settlement ......................... 8

      A.  The Court "will likely be able to" grant final approval to the Settlement. ................. 8

          1.  The Class Representative and Class Counsel have adequately represented the Class. ................................................................................................. 8

          2.  The Settlement was negotiated at arm's-length. .................................... 9

          3.  The Settlement treats Class members equitably relative to each other. ................. 9

          4.  The relief provided by the Settlement is adequate, taking into the relevant factors of cost, risk, delay, distribution, and attorneys' fees ................................ 10

      B.  The Court "will likely be able to" certify the Class for entry of judgment on the Settlement. ...................................................................................... 13

          1.  The Class meets the numerosity, commonality, typicality, and adequacy requirements of Fed. R. Civ. P. 23(a). ................................................. 14

          2.  The Class meets the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3) .................................................................. 14

   II.  The Court should approve the proposed notice plan and schedule a final approval hearing date for approximately 110 days after entry of the preliminary approval order .. 15

Proposed Schedule of Deadlines ................................................................................. 16

Conclusion .................................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................................... 7, 15

*Armstrong v. Bd. Of Sch. Dir.'s of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980),
  *overruled on other grounds Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) ................................................................................................ 5

*Bell v. Pension Comm. of ATH Holding Co.*,
  No. 1:15-cv-02062-TWP-MPB, 2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ...................... 10

*Bell v. PNC Bank, N.A.*,
  800 F.3d 360 (7th Cir. 2015) ........................................................................................... 6, 14

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2012) ........................................................................................... 7, 15

*Chambers v. Together Credit Union*,
  No. 19-CV-00842-SPM, 2021 WL 1948453 (S.D. Ill. May 14, 2021) .................................... 11

*Dubinski v. Sentry Ins. a Mut. Co.*,
  No. 1:14-CV-00551-TWP-DKL, 2015 WL 13640103 (S.D. Ind. May 28, 2015) .................. 12

*Flood v. Dominguez*,
  270 F.R.D. 413 (N.D. Ind. 2010)............................................................................................ 6

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ......................................... 12

*Heekin v. Anthem, Inc.*,
  No. 1:05-CV-01908-TWP, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ............................ 12

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) .................................................................................................. 5

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................................. 10

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ........................................................................................... 7, 14

*Muro v. Target Corp.*,
  580 F.3d 485 (7th Cir. 2009) ........................................................................................... 6, 14

Order, *In re TD Bank, N.A. Debit Card Litig.*,
  No. 6:15-MN-2613-BHH (D.S.C. Jan. 9, 2020), ECF No. 233.............................................. 10

*Saltzman v. Pella Corp.*,
  257 F.R.D. 471 (N.D. Ill. 2009)
  *aff'd*, 606 F.3d 391 (7th Cir. 2010)................................................................................... 6, 14

*Suchanek v. Sturm Foods, Inc.*,
    311 F.R.D. 239 (S.D. Ill. 2015) .......................................................................... 6, 14

*Warren v. Town of Speedway*,
    No. 1:13-cv-1049-JMS-DKL, 2013 WL 6729655 (S.D. Ind. Dec. 19, 2013) .................... 6, 14

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................ 6, 14

Fed. R. Civ. P. 23(b) ......................................................................................... 6, 7, 14

Fed. R. Civ. P. 23(c) ......................................................................................... 7, 8, 16

Fed. R. Civ. P. 23(e) .......................................................................................... *passim*

Fed. R. Civ. P. 23(f) .............................................................................................. 11

Fed. R. Civ. P. 23(g) ............................................................................................. 15

**Treatises**

4 William B. Rubenstein, *Newberg on Class Actions* § 12:17 (5th ed.)....................................... 11

## INTRODUCTION

After engaging in motion practice over the legal claims; gathering written and document discovery totaling hundreds of thousands of pages, as well as taking depositions; briefing class certification; and participating in a full-day mediation followed by additional negotiations, the parties reached the proposed class action Settlement Agreement and Release (the "Settlement"), attached as Exhibit 1 to the Declaration of Lynn Toops, that is now before the Court for preliminary approval under Federal Rule of Civil Procedure 23(e)(1). The Settlement, which was the result of hard-fought, arm's-length negotiations, provides a cash Settlement Fund of $3,825,000 for the proposed Class and millions of additional dollars in debt forgiveness. This represents the majority of alleged actual damages, an astounding result for the Class. Further, the Settlement monies will be distributed automatically to the members of the Class without need for them to complete a claim form or take any additional steps, and no portion of the settlement amounts will revert to Defendant. Plus, millions of dollars in debt will be automatically forgiven. The Settlement represents an excellent result for the Class in this litigation, and the Court should grant preliminary approval to the Settlement. Granting preliminary approval will allow notice of the Settlement to be distributed to the Class and for a hearing to be scheduled to consider whether to grant final approval.

## STATEMENT OF FACTS

### I.      The litigation, motion practice, and discovery.

Plaintiff Gregory Hash filed this class action against Defendant First Financial Bancorp, formerly known as MainSource Bank, on May 6, 2020. Class Action Compl., ECF No. 1. Plaintiff alleged that Defendant breached its contract with customers (including breach of the covenant of good faith and fair dealing) and violated the Indiana Deceptive Consumer Sales Act ("IDCSA") by charging customers a $37 overdraft fee ("OD Fee") on accounts that were never

actually overdrawn. *Id.* Specifically, Plaintiff alleged that Defendant improperly charged OD Fees on debit card transactions that were authorized when the customer had a sufficient available balance to cover the transaction but that later settled into a negative balance, so-called "Authorize Positive, Settle Negative" or "APSN" transactions. *Id.*

On July 10, 2020, Defendant moved to dismiss the complaint. Def. First Fin. Bancorp's Mot. to Dismiss, ECF No. 17. Defendant argued that its contract permitted it to charge OD Fees on APSN transaction and that Plaintiff's IDCSA claims were time-barred. Br. in Supp. of Def. First Fin. Bancorp's Mot. to Dismiss, ECF No. 18. Plaintiff responded on July 31, 2020. Pl.'s Resp. in Opp'n to Def. First Fin. Bancorp's Mot. to Dismiss, ECF No. 29. Defendant replied on August 7, 2020. Reply in Supp. of Def. First Fin. Bancorp's Mot. to Dismiss, ECF No. 32. Plaintiff thereafter filed several notices of supplement authority. ECF Nos. 44, 58. On March 8, 2021, the Court denied the motion and sustained all claims. Order, ECF No. 63. On March 22, 2021, Defendant answered the complaint. Ans. of Def. First Fin. Bancorp, ECF No. 66.

In the interim, the parties: submitted, and the Court approved, a Case Management Plan and ESI Supplement, ECF No. 27; filed Preliminary Witness and Exhibit Lists, ECF Nos. 28, 31; negotiated a Stipulated Protective Order that the Court entered, ECF No. 40; engaged in significant discovery, including production of over 243,000 pages of documents, production of transaction data, and depositions of Plaintiff, along with a Rule 30(b)(6) deposition of Defendant through three corporate representatives; participated in numerous status conferences with Magistrate Judge Dinsmore. *See* Minute Entries, ECF Nos. 38, 42, 45, 48, 54, 73; Ex. A, Declaration of Lynn A. Toops in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Toops Decl.") ¶ 2.

Significantly, on March 5, 2021, Plaintiff filed his motion for class certification. Pl.'s Mot. for Class Cert., ECF No. 61. The motion was supported by a memorandum in support and voluminous exhibits, including an expert declaration from Plaintiff's data expert Arthur Olsen. ECF Nos. 62, 62-1 to -35. Defendant responded on April 2, 2021. Def. First Fin. Bancorp's Resp. in Opp'n to Pl.'s Mot. for Class Cert., ECF No. 67. The Settlement was reached, and all deadlines stayed, prior to a decision on the motion for class certification. Order, ECF No. 75.

## II.     The mediation and Settlement.

On April 14, 2021, the parties engaged in a mediation with mediator John C. Trimble, Esq. Toops Decl. ¶ 3. At the mediation, the parties each vigorously represented their own interests in negotiating towards a compromise. *Id.* After a full day of mediating, the parties reached an agreement in principle to settle the case, subject to negotiation of a final formal settlement agreement. *Id.* Following the mediation, the parties drafted and negotiated formal settlement drafts, and ultimately executed the final Settlement on June 24, 2021. *Id.*

Under the terms of the Settlement:

- The parties stipulate to certification of a class under Federal Rules of Civil Procedure 23(a) and (b)(3) defined as:

  Those current and former customers of Defendant who are residents of Indiana, Illinois, and Kentucky, and who were assessed APSN Fees during the Class Period.

  Settlement §§ 1(e), 2. The Class Period is May 6, 2010, through November 30, 2019. *Id.* § 1(j).

- Defendant will pay $3,825,000 as consideration into a Settlement Fund. *Id.* §§ 1(ff).

- The Settlement fund will be used for Court-approved costs of notice and administration, attorneys' fees and expenses, expert expenses, and a service award, leaving the Net Settlement Fund to be distributed to Class members. *Id.* § 1(z). Class members will not need to submit a claim. Instead, current customers will automatically receive a credit to their account and former customers will automatically be sent a check. *Id.* §§ 9(c)–(f).

3

- No monies in the Settlement Fund revert to Defendant. Any Residual Funds remaining one year after distribution will be paid to an appropriate *cy pres* recipient. *Id.* §§ 10, 12.

- In addition, Defendant will forgive all APSN Fees or other amounts that members of the Class owe to Defendant on an account that has been closed within five years to the date of the Preliminary Approval Order through November 30, 2019. *Id.* §§ 1(gg), 3. The total amount of debt forgiveness is in the process of being calculated but is estimated based on initial data to be several million dollars. Toops Decl. ¶ 3.

- Notice of the Settlement will be emailed and/or mailed to members of the Class and the Long Form Notice will be posted to the Settlement website, with 30 days allocated for Class members to object or opt-out of the Settlement by sending an Exclusion Letter or objection to the Settlement Administrator. Settlement §§ 1(f), 1(g), 1(w), 1(aa), 13, 14.

- If the Court grants final approval to the Settlement, the Defendant will be released from claims that were or could have been alleged in the Complaint relating to the assessment of APSN Fees, and judgment will be entered on the Settlement resolving the claims in this lawsuit. *Id.* §§ 7, 15.

## LEGAL STANDARD FOR PRELIMINARY APPROVAL AND NOTICE

I.   **A court grants preliminary approval to a class action settlement under Fed. R. Civ. P. 23(e)(1)(B) upon determining that "the court will likely be able to" later: (a) grant final approval; and (b) certify a class for entry of judgment on the settlement.**

For "preliminary approval" of a proposed class action settlement, Federal Rule of Civil Procedure 23(e)(1)(B) requires a court to evaluate two issues: (a) whether "the court will likely be able to" later grant final approval to the settlement as a fair, reasonable, and adequate compromise; and (b) whether "the court will likely be able to" later certify the class for purposes of entering judgment on the settlement. Fed. R. Civ. P. 23(e)(1)(B).

A.   **A court determines whether it "will likely be able to" later grant final approval by preliminarily evaluating whether the settlement appears "fair, reasonable, and adequate" under the factors set forth in Fed. R. Civ. P. 23(e)(1)(B).**

To determine whether "the court will likely be able to" grant final approval to a proposed class action settlement a court preliminarily evaluates whether the settlement appears at first glance

4

to be "fair, reasonable, and adequate." Although various circuits previously developed long lists of factors for this evaluation, the 2018 Amendment to Rule 23(e)(2) "directs the parties to present the settlement to the court in terms of a shorter list of core concerns" and to "focus[] on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. To that end, Rule 23(e)(2) requires a court to consider the key issues of whether: (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the proposal treats class members equitably relative to each other, and (4) the relief provided by the settlement is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3).

In considering these factors, a court must bear in mind that "[f]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Indeed, "[s]ettlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. Of Sch. Dir.'s of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public," and "[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Id.*

5

**B.      A court determines whether it "will likely be able to" later certify a class for entry of judgment on the settlement by preliminarily evaluating whether the proposed class meets the requirements of Fed. R. Civ. P. 23(a) and (b).**

In deciding whether the court "will likely be able to certify" a class for entry of judgment on a proposed settlement, a court evaluates whether the proposed class meets the four requirements of Rule 23(a) and any one of the requirements of the subsections of Rule 23(b), which in this case is subsection 23(b)(3). *See, e.g.*, *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 373 (7th Cir. 2015).

Under Rule 23(a), the proposed class must satisfy the four requirements of numerosity, commonality, typicality, and adequacy. *Id.* Numerosity is satisfied where joinder of all class members is impracticable and is generally met when there are 40 or more class members. *Warren v. Town of Speedway*, No. 1:13-cv-1049-JMS-DKL, 2013 WL 6729655, at *3 (S.D. Ind. Dec. 19, 2013) (citing *Flood v. Dominguez*, 270 F.R.D. 413, 417 (N.D. Ind. 2010)). Commonality is met where there is at least a "single common question of law or fact" involved and where the class's claims "depend upon a common contention that is capable of class-wide resolution." *Bell*, 800 F.3d at 374. Typicality is met where "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). And "[t]he adequacy requirement is satisfied when the named representatives have 'a sufficient interest in the outcome of the case to ensure vigorous advocacy' and '[do] not have interests antagonistic to those of the class.'" *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 256 (S.D. Ill. 2015) (quoting *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. 2009) *aff'd*, 606 F.3d 391 (7th Cir. 2010)).

Finally, the requirements of Rule 23(b)(3) are satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "predominance

6

requirement is satisfied when common questions represent a significant aspect of a case and . . .

can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ.*

*HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). And the superiority requirement is generally

satisfied when a class action would aggregate many relatively small-value individual claims into

one case. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801-02 (7th Cir. 2012). Further, in the

context of a settlement, a court need not consider manageability issues that might make a class

trial complicated because a settlement resolves all the claims without a trial. *Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class

certification, a district court need not inquire whether the case, if tried, would present intractable

management problems, for the proposal is that there be no trial.").

## II.     Once a court grants "preliminary approval," it must approve and direct notice to the class, set deadlines for class members to opt-out or object, and set a date for a final approval hearing.

Upon the granting of preliminary approval, a court "must direct notice in a reasonable

manner to all class members" to inform them of the proposed settlement. Fed. R. Civ. P.

23(e)(1)(B). Notice may be given by "United States mail, electronic means, or other appropriate

means." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state in plain, easily

understood language:

> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). After the time for objections and opt-out requests has passed, the Court then holds a hearing to consider whether to grant final approval, taking into account any objections raised by class members and all other relevant factors. Fed. R. Civ. P. 23(e)(2).

## ARGUMENT

## I.      The Court should grant preliminary approval to the Settlement.

The Court should grant preliminary approval to the Settlement because it represents an excellent result for the Class and because the Court "will likely be able to" both grant final approval and certify the Class for entry of judgment on the Settlement, after notice and the final approval hearing.

### A.      The Court "will likely be able to" grant final approval to the Settlement.

The Court "will likely be able to" grant final approval because the Settlement is a fundamentally "fair, adequate, and reasonable" compromise of the Class's claims when examined under the Rule 23(e)(2) factors.

#### 1.      The Class Representative and Class Counsel have adequately represented the Class.

First, both the Class Representative and Class Counsel have adequately represented the Class. Fed. R. Civ. P. 23(e)(2)(A). The Class Representative's interests are aligned with those of the Class because he shares the same claims as the other members of the Class. And he has actively participated in the prosecution of the case by providing information, conferring with counsel, and sitting through a deposition. Toops Decl. ¶ 5. Likewise, Class Counsel's interests were aligned with those of the Class in seeking the largest recovery possible from Defendant, considering the overall strength of the claims and risks and delays of litigation. *Id.* Class Counsel expended significant resources in the case, including defeating the motion to dismiss, engaging in discovery that included hundreds of thousands of pages of documents, depositions, and expert

witness work, plus preparing a robust motion for class certification, and negotiating the Settlement. *Id.* Class Counsel therefore had the requisite factual information and was aware of potential legal hurdles such that they were in a position to make an informed decision about what constitutes a fair settlement. *Id.* And Class Counsel has extensive experience in bank fee class actions across the country, such that they possess the necessary skill and experience to evaluate the Settlement relief in light of litigation risks and delays. *Id.*

### 2. The Settlement was negotiated at arm's-length.

Second, the Settlement was negotiated at arm's-length. Fed. R. Civ. P. 23(e)(2)(B). Each side is represented by competent counsel who pressed their clients' position at mediation. *Id.* ¶ 6. And the mediation was facilitated by attorney John Trimble who is an experienced and well-respected mediator generally and who specifically has experience mediating several bank fee class action settlements in the past several years. *Id. See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. Therefore, the process by which the Settlement was reached was adversarial, not collusive, and the procedure by which the Settlement was reached was therefore procedurally fair. It was also achieved by counsel and a mediator with extensive experience in bank fee class action settlements.

### 3. The Settlement treats Class members equitably relative to each other.

Third, the Settlement treats Class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). Under the Settlement, the Settlement Fund will be distributed *pro rata*. Specifically, amounts due to each Class member will be calculated by an expert from Defendant's data, such that Class members who were charged more APSN Fees will receive a larger distribution than customers who were charged fewer such fees. Settlement § 8(d)(iv). And Class members who owed Defendant sums when their accounts were closed will have those sums forgiven. *Id.* § 1(gg), 3. Class members may receive both a cash payment and debt

forgiveness, the latter of which is important relief because in addition to extinguishing the debt, it will remove this black mark against these Class members in systems banks use to screen for whether to permit a customer to open a checking account. This relief is excellent and consistent with relief in similar bank fee class actions and is reasonable and equitable. *See, e.g.*, *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.").

### 4. The relief provided by the Settlement is adequate, taking into the relevant factors of cost, risk, delay, distribution, and attorneys' fees.

Finally, the relief provided by the Settlement is significant, meaningful relief to the Settlement Class, particularly when taking into account the relevant factors to consider if no Settlement had been achieved. Fed. R. Civ. P. 23(e)(2)(C). The Settlement's $3.825 million dollar cash component represents a majority of projected actual damages, depending on whether certain deductions claimed by Defendant are included or not, and when the additional millions of dollars in debt forgiveness are included, the value of the Settlement represents a significant recovery on the claims. Toops Decl. ¶ 7. *Bell v. Pension Comm. of ATH Holding Co.*, No. 1:15-cv-02062-TWP-MPB, 2019 WL 4193376, at *1 (S.D. Ind. Sept. 4, 2019) (total value of a settlement includes monetary and non-monetary relief); Order, *In re TD Bank, N.A. Debit Card Litig.*, No. 6:15-MN-2613-BHH (D.S.C. Jan. 9, 2020), ECF No. 233 (debt forgiveness is part of the total value of a settlement). This represents a significant recovery and is even more significant when weighed against the relevant countervailing factors.

### (a) The costs, risks, and delay of trial and appeal support the Settlement.

First, had a Settlement not been achieved, the costs, risks, and delay of trial and appeal would be significant. Fed. R. Civ. P. 23(e)(2)(C)(i). Plaintiff faced the risk of not having a class

10

certified at all, which would have meant there would be no Class recovery at all. Even had the Court certified the Class on an adversarial basis, Defendant would have had the right to seek an immediate Rule 23(f) appeal. And Plaintiff faced risks of surviving summary judgment, not to mention prevailing at trial or prevailing in an amount equal to that obtained through Settlement and then then retaining all victories through the appeals process. The Court is no doubt aware this all would have taken many years of litigation, delaying any recovery to the Class and placing any recovery at risk of not being obtained at all. *See, e.g.*, *Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) ("The costs, risks, and delays of trial and appeal would have delayed any recovery for several years, and would have risked the Class recovering nothing . . . ."). The litigation would have involved extensive expert work, which would have been costly as well, which would ultimately have been borne by Class members, further reducing any recovery. Toops Decl. ¶ 8. By contrast, the Settlement represents a meaningful, guaranteed recovery for Class members now, which supports its approval.

> **(b)     The effectiveness of the proposed method of distributing the relief to the Class without need for a claims process supports the Settlement.**

Second, the effectiveness of the proposed method of distributing the relief to the Class supports approval. Fed. R. Civ. P. 23(e)(2)(C)(ii). "[T]he best practice in most cases is to create a system for distributing the class's funds without the necessity of any claiming process." 4 William B. Rubenstein, *Newberg on Class Actions* § 12:17 (5th ed.). The Settlement follows this "best practice." Class members with open accounts will receive a credit to their account, and Class members without current accounts will receive a check—all without the need to submit any claim or take any action whatsoever. Settlement § 9. Likewise, forgiveness of Uncollected Amounts will be automatic. *Id.* § 3. This means the vast majority of the Net Settlement Fund will

11

reach Class members and be of benefit to them. And any Residual Funds, which should be fairly a low amount given direct distribution to the Class, will not revert to the Defendant but will be paid to a charity through an appropriate *cy pres* award. *Id.* § 10. The Settlement's method of ensuring that Class members actually receive the benefits of the Settlement and that no benefit reverts to Defendant support approval.

###### (c)     The terms of the proposed award of attorney's fees supports the Settlement.

Third, the terms of the proposed award of attorney's fees supports the Settlement. Fed. R. Civ. P. 23(e)(2)(C)(iii). The issue of attorneys' fees was not negotiated until all material terms of relief to the Class had been negotiated. Toops Decl. ¶ 9. Class Counsel's fee is contingent— meaning they risked never being paid for their time or reimbursed for their expenses had the litigation not resulted in a recovery. *Id.* The maximum fee Class Counsel may request is one-third of the Value of the Settlement, which is the standard contingent class action fee in the Seventh Circuit and in bank fee litigation, and it is the amount routinely awarded to Class Counsel. *See, e.g.*, *Dubinski v. Sentry Ins. a Mut. Co.*, No. 1:14-CV-00551-TWP-DKL, 2015 WL 13640103, at *3 (S.D. Ind. May 28, 2015) ("Class Counsel has shown the Court that they have routinely been awarded a contingent 33 1/3%"); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation."); *Heekin v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878032, at *3 & *4 n.3 (S.D. Ind. Nov. 20, 2012) (collecting cases awarding one-third or higher fee); Order Awarding Attorney Fees, Costs, and Class Representative Service Award, *Chambers v. Together Credit Union*, No, 19-cv-00842-SPM, ECF No. 85 (S.D. Ill. May 14, 2021) (awarding class counsel one-third of value of the settlement); Order Granting Final Approval, *Holt v. Comm'y*

*Am. Credit Union*, No. 4:19-cv-00629-FJG, ECF No. 51 (W.D. Mo. Dec. 8, 2020) (same). Toops Decl. ¶ 5 (citing bank fee cases in which Class Counsel has been awarded a one-third fee). The Notice apprises the Class members of the maximum possible requested fee amount. Settlement Exs.1–2. A separate fee petition will be filed within 15 days of the date Notice is sent and will be posted to the Settlement website, affording Class members a chance to object to the petition in detail if they so choose. Settlement § 6. And the Settlement is not contingent on Class Counsel receiving any particular fee, which will be awarded in the Court's discretion. *Id.* §8(d)(i) ("The Parties agree that the Court's failure to approve, in whole or in part, any award of attorneys' fees shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination."). There is therefore nothing peculiar about the terms of the proposed fee that would prevent preliminary approval.

> **(d)    There are no Rule 23(e)(3) agreements to be identified or which would undermine the Settlement.**

Finally, there are no agreements that would need to be disclosed to the Court under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv). Agreements under Rule 23(e)(3) must be disclosed because they "may also bear on the adequacy of the proposed relief, particularly regarding the equitable treatment of all members of the class." Fed. R. Civ. P. 23(e)(2)(C)(iv) advisory committee's notes to 2018 amendment. Here, there are no such agreements, and therefore nothing to call into doubt that the Settlement is "fair, reasonable, and adequate."

The Court therefore "will likely be able to" grant final approval to the Settlement, which satisfies the first requirement for the granting of preliminary approval.

> **B.    The Court "will likely be able to" certify the Class for entry of judgment on the Settlement.**

Similarly, the second and final requirement for preliminary approval is satisfied because the Court "will likely be able to" certify the Class for purposes of entering judgment on the

Settlement. As detailed in Plaintiff's original memorandum in support of his motion for class

certification, ECF No. 62, and as summarized below, the Class meets all of the requirements for

certification under Rule 23(a) and (b)(3).

      **1.**      **The Class meets the numerosity, commonality, typicality, and**
              **adequacy requirements of Fed. R. Civ. P. 23(a).**

All of the Rule 23(a) factors (numerosity, commonality, typicality, and adequacy) are

satisfied. Numerosity is satisfied because the Class is composed of thousands of members.

*Warren*, 2013 WL 6729655, at *3 (numerosity is satisfied by 40 or more members).

Commonality is met because all Class members share the "common question of law or fact" and

their claims "depend upon a common contention that is capable of class-wide resolution,"

namely whether Defendant's standard form customer contracts permitted it to uniformly assess

APSN Fees. *Bell*, 800 F.3d at 374. Typicality is met because "the named representatives' claims

have the same essential characteristics as the claims of the class at large" because, here, the Class

Representative seeks to recover the same fees on the same theory as the Class members. *Muro*,

580 F.3d at 492. And similarly, "[t]he adequacy requirement is satisfied" because "the named

representative[ ] ha[s] 'a sufficient interest in the outcome of the case to ensure vigorous

advocacy' and '[does] not have interests antagonistic to those of the class.'" *Suchanek*, 311

F.R.D. at 256 (quoting *Saltzman*, 257 F.R.D. at 480 *aff'd*, 606 F.3d 391 (7th Cir. 2010)).

      **2.**      **The Class meets the predominance and superiority requirements of**
              **Fed. R. Civ. P. 23(b)(3).**

All of the Rule 23(b)(3) factors (predominance and superiority) are likewise satisfied.

Predominance is satisfied because "common questions represent a significant aspect of [this] case

and . . . can be resolved for all members of a class in a single adjudication," as all of the claims

depend on the issue of whether or not Defendant was permitted under its contract to charge the

Class members APSN Fees. *Messner*, 669 F.3d at 815. And superiority is satisfied because a class

settlement permits the relatively low-value claims ($37 per APSN Fee) to be adjudicated for thousands of Class members in one action without the need for the complexities of trial. *Butler*, 727 F.3d at 799; *Amchem Prods., Inc.*, 521 U.S. at 620. In addition, Defendant has stipulated for the purposes of settlement that the requirements of Rules 23(a) and 23(b)(3) are met.

The Court should therefore grant preliminary approval and certify the following Class for purposes of notice, and appoint Plaintiff's counsel as Class Counsel, and Plaintiff as Class Representative:

> Those current and former customers of Defendant who are residents of Indiana, Illinois, and Kentucky, and who were assessed APSN Fees during the Class Period.[1]

> Excluded from the Class are Defendant, its parents, subsidiaries, Affiliates, officers, and director; all individuals or entities who make a timely election to opt out or be excluded from the Class; and all judges assigned to this Action and their immediate family members.

For the reasons set forth above in Section I.A.1, and in the Toops Declaration, Plaintiff's Counsel have and will fairly and adequately represent the interests of the Class, and the Court should therefore appoint Plaintiff's counsel as Class Counsel under Rule 23(g) and appoint Plaintiff as Class Representative.

## II. The Court should approve the proposed notice plan and schedule a final approval hearing date for approximately 110 days after entry of the preliminary approval order.

As part of granting preliminary approval, the Court should also approve the proposed forms and manner of notice attached to the Settlement as Exhibits 1 and 2. The notice constitutes the "best practicable notice" under the circumstances and is direct notice to each class member individually, either by email or mail. The long form of notice is based off of plain-English forms adopted by the Federal Judicial Center and informs the class members of all the required

---

[1] The Class Period is May 6, 2010, through November 30, 2019. Settlement § 1(j).

15

information under Federal Rule of Civil Procedure 23(c)(2)(B), including (i) the nature of the action; (ii) the classes; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The Settlement Administrator will provide the notice and report to Class Counsel who will in turn report to the Court on the effectiveness of the notice plan prior to the Final Approval Hearing. Settlement § 5(e).

## PROPOSED SCHEDULE OF DEADLINES

Finally, the notice also provides deadlines for opt-outs and objections, and for the Court to schedule a final approval hearing after Class members have had a chance to opt-out of, object to, or remain part of the Settlement. Plaintiff proposes the following schedule:

| Event | Deadline |
|---|---|
| Motion for Attorneys' Fees, Costs and Expenses, and Service Award | 15 days after Notice is first sent |
| Deadline for Opt-Outs and Objections | 30 days after Notice is first sent |
| Motion in Support of Final Approval | 15 days after the Deadline to Opt-Out or Object |
| Final Approval Hearing | October 13, 2021, or as soon thereafter as the Court's calendar permits. |

## CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval and enter the tendered Preliminary Approval Order.

Dated: June 25, 2021                          Respectfully submitted,

                                              s/Lynn A. Toops
                                              Lynn A. Toops
                                              Lisa M. LaFornara
                                              COHEN & MALAD, LLP
                                              One Indiana Square, Suite 1400
                                              Indianapolis, IN 46220
                                              ltoops@cohenandmalad.com
                                              llafornara@cohenandmalad.com

16

Jeffrey D. Kaliel
KALIEL GOLD PLLC
1875 Connecticut Ave. NW 10th Floor
Washington, D.C. 20009
jkaliel@cohenandmalad.com

John Steinkamp
JOHN STEINKAMP & ASSOCIATES
5214 East St., Suite D1
Indianapolis, IN 46227
john@johnsteinkampandassociates.com

*Counsel for Plaintiff and the proposed*
*Settlement Class*

## CERTIFICATE OF SERVICE

I certify that on June 25, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*s/ Lynn Toops*
Lynn Toops

17